UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JAVIER GIMENEZ RIVERO,

    Petitioner,

v.    Case No. 6:26-cv-66-RBD-NWH

SHERIFF JOHN MINA; LOUIS A. QUINONES, JR.; ICE/U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; WARDEN, ORANGE COUNTY JAIL; and UNITED STATES ATTORNEY GENERAL,

    Respondents.
_____

## **ORDER, INJUNCTION, AND ORDER TO SHOW CAUSE**

Before the Court is Petitioner Javier Gimenez Rivero's Petition for Writ of Habeas Corpus (Doc. 1) and Motion for Temporary Restraining Order (Doc. 4).

### INTRODUCTION

This Order resolves one of many cases flooding the courts in which the Government unlawfully detained a noncitizen who has been present in this country for years. This Court does not have the power to impede removal proceedings, but it does have the power to ensure that the Government follows the law when it detains people. It did not, so the Court ordered Petitioner's immediate release. In this country, we don't enforce the law by breaking the law.

## BACKGROUND

Petitioner Javier Gimenez Rivero is a high-school student who has been living in Central Florida with his family for over four years. (*See* Doc. 1, pp. 4, 9; Doc. 9, p. 2; Doc. 14.) His parents fled Venezuela and brought him to the United States over the Mexico border when he was a minor. (Doc. 12, p. 11.) At that time, he was paroled (though his parole has since expired) and permitted to enter the country. (*Id.* at 11.) His parents filed applications for asylum, which remain pending.[1] (*Id.* at 10; Doc. 1, pp. 2, 4.) He was issued a Florida driver's license, a Social Security card from the Department of Homeland Security ("DHS") for work purposes, and a U.S. Employment Authorization Document valid through 2030.[2] (Doc. 1, pp. 9–11.)

Gimenez Rivero continued to live, work, and attend school here in Central Florida for years without incident until Wednesday, January 7, 2026, when he was arrested by Orange County Sheriff's Officers. (*Id.* at 3.) He had not committed any crime. (*Id.*) In fact, he has no criminal record. (*Id.*) Nor did the

---

[1] Counsel mistakenly asserted in the initial Petition that Gimenez Rivero had temporary protected status ("TPS"). (Doc. 1, p. 3.) Counsel later clarified that he only has a pending TPS application. (Doc. 9, p. 1.) The Government asserted that Venezuela's TPS designation has been terminated (Doc. 11, p. 5), but because Gimenez Rivero does not currently have approved TPS status, this issue is irrelevant.

[2] To protect personally identifiable information, counsel should ensure in the future that exhibits are filed as separate attachments so they can be placed under seal while the pleadings and briefing remain visible to the public.

2

officers have a notice for him to appear for removal proceedings. (*See id.*) Indeed, removal proceedings had not yet begun. (*See* Doc. 11-2, p. 1.) Rather, officers just told Gimenez Rivero he was being arrested because he was "undocumented." (Doc. 1, p. 3.) They took him to the Orange County Jail, where he was held under a U.S. Immigration and Customs Enforcement ("ICE") detainer for days without criminal charges, a notice to appear, a warrant, a hearing, or any written notice of the basis of his detention. (*Id.* at 3–4.)

Five days later, on January 12, ICE told Gimenez Rivero that it was moving him to an immigration detention facility in Miami.³ (*Id.* at 2.) So Gimenez Rivero's attorneys at the Arroyo Law Firm filed a petition for a writ of habeas corpus, arguing that his warrantless arrest and detention are unlawful and seeking to prevent his transfer from the local jail. (*See id.* at 6.) The following day, counsel filed an emergency motion for a temporary restraining order ("TRO"), seeking Gimenez Rivero's immediate release. (Doc. 4.)

On January 14, the Court issued a brief Order granting the TRO only to the extent that the named Respondents—the Sheriff, the Orange County Corrections Chief, ICE, the Warden of the Orange County Jail, and the U.S. Attorney General—

---

³ *See generally* Ben Wieder & Shirsho Dasgupta, *Hundreds of Alligator Alcatraz Detainees Drop Off the Grid After Leaving Site*, MIA. HERALD (Jan. 5, 2026), www.miamiherald.com/news/local/immigration/article312042943.html.

were ordered not to remove Gimenez Rivero from the Orange County Jail, to preserve the status quo pending an emergency hearing. (Doc. 5.) The Court then found that the Petition was likely to succeed on the merits and ordered an accelerated response from the Government. (Doc. 7.)

On January 16, nine days after Gimenez Rivero was detained, four days after the Petition was filed, and two days after the Court's Order, ICE issued him a Notice to Appear, beginning removal proceedings. (Doc. 11-2.) The notice advised that Gimenez Rivero was an "alien present in the United States who has not been admitted or paroled" and set a hearing before an immigration judge for two months later. (*Id.* at 1.)

On January 20, the Government filed a response opposing the Petition and the motion. (Doc. 11.) The Government argued that this Court lacks jurisdiction over the Petition under 8 U.S.C. § 1252(g), which governs decisions to commence removal proceedings. (*Id.* at 4 (citing *Gupta v. McGahey*, 709 F.3d 1062 (11th Cir. 2013)).) The Government also argued that Gimenez Rivero is subject to mandatory detention under 8 U.S.C. § 1225, so no warrant or notice was required to detain him. (*Id.* at 5–7 (citing *Jennings v. Rodriguez*, 583 U.S. 281 (2018)).) Gimenez Rivero replied, arguing that neither § 1252(g) nor § 1225 apply. (Doc. 12.)

On January 21, at an emergency hearing, the Court orally granted the Petition and motion and ordered the Government to immediately release

4

Gimenez Rivero, who went home to his family that day. (Docs. 13, 14.) This written Order memorializes the Court's oral pronouncements.

## STANDARDS AND ANALYSIS

### I. Jurisdiction

The Government, citing *Gupta*, argues that this Court lacks jurisdiction under § 1252(g) to hear the Petition because "[s]ecuring an alien while awaiting a removal determination constitutes an action taken to commence proceedings." (Doc. 11, p. 4.) This argument beggars belief and appears to deliberately mislead the Court about the law and the record.

It is well-settled that courts have habeas jurisdiction to consider "challenges to the lawfulness of immigration-related detention." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). While it is true that courts do not have jurisdiction to hear claims by aliens challenging decisions specifically to "commence proceedings, adjudicate cases, or execute removal orders," 8 U.S.C. § 1252(g), this jurisdictional bar is quite narrow. *See Canal A Media Holding, LLC v. USCIS*, 964 F.3d 1250, 1257 (11th Cir. 2020). In the Government's cited *Gupta* case, ICE denied an alien's application to adjust his immigration status, issued a notice to appear for removal, and issued an arrest warrant in light of the alien's "escalating delusion[s]" related to his disputes with his employer, Walt Disney World. *See Gupta*, 709 F.3d at 1063–64 (cleaned up). Because Gupta directly challenged his removal, the Eleventh Circuit

affirmed the district court's dismissal of his case on jurisdictional grounds under § 1252(g). *Id.* at 1055–56. But § 1252(g) does not "impose a general jurisdictional limitation." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Rather, it "bars challenges only to the three discrete actions enumerated." *Canal A*, 964 F.3d at 1257 (cleaned up). As the Eleventh Circuit made clear twenty years ago, § 1252(g) "does not proscribe substantive review of the underlying legal bases" for an alien's detention. *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006).

Here, Gimenez Rivero explicitly challenges the basis for his detention, not the decision to commence removal proceedings. (Doc. 1, p. 6; Doc. 4, p. 2; Doc. 12, pp. 3–4.) The Government's argument to the contrary is, in a word, *inexplicable*. As a factual matter, challenging the decision to commence removal proceedings would have been a rather difficult thing for Gimenez Rivero to do in the Petition…given that removal proceedings were not actually commenced until *days after* he filed the Petition. (*See* Doc. 11-2, p. 1.) As a legal matter, even if removal proceedings had already begun, this Court still has jurisdiction to consider the legal basis for his detention, based on decades-old precedent. *See Madu*, 470 F.3d at 1368. So the Government's jurisdictional argument fails.

## II. Merits

The Government's argument on the merits is similarly ill-informed. Citing *Jennings*, the Government insists that Gimenez Rivero is subject to mandatory

6

detention under § 1225. (Doc. 11, pp. 5–6.) But *Jennings* compels the opposite conclusion.

Two pertinent statutory provisions govern the detention of noncitizens: 8 U.S.C. §§ 1225 and 1226. *See Jennings*, 583 U.S. at 296–306. Section 1225 applies to "aliens seeking entry into the United States." *Id.* at 297. Section 1226 applies to "aliens already present in the United States." *Id.* at 303.

Specifically, § 1225(b)(2)(A) provides: "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained . . . ." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). In other words, to trigger mandatory detention under this provision, three things must be true: the alien must be: "(1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted." *Kashranov v. Jamison*, No. 2:25-CV-5555, 2025 WL 3188399, at *6 (E.D. Pa. Nov. 14, 2025). If the alien is not *seeking admission* at the border but is instead *already present* in the United States, then § 1226 applies, not § 1225. *See Jennings*, 583 U.S. at 289 ("U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings

under §§ 1226(a) and (c)."). And § 1226(a),[4] unlike § 1225(b)(2), provides for an individualized bond hearing. *See Jennings*, 583 U.S. at 306.

The Government does not even mention § 1226, arguing instead in blanket and cursory fashion that § 1225 applies to all aliens who have not been admitted so they do not have to provide bond hearings. (*See* Doc. 11, pp. 5–7.) This reading of the statute is, put plainly, incoherent.

The Government's position ignores the everyday meaning of the statutory text. *See Bethancourt Soto v. Soto*, No. 25-CV-16200, 2025 WL 2976572, at *5–6 (D.N.J. Oct. 22, 2025) (O'Hearn, J.) (actively "seeking admission" at the border is necessarily different than merely being present in the country as a static condition); *see also Kashranov*, 2025 WL 3188399, at *6 ("While [the petitioner] is an applicant for admission, he is not seeking admission. He's already here."). It improperly renders the term "seeking admission" in § 1225(b)(2)(A) mere surplusage, duplicative of the phrase "applicant for admission," which violates the canon of statutory construction that every word must be given meaning. *See Bethancourt Soto*, 2025 WL 2976572, at *6; *see also Kashranov*, 2025 WL 3188399, at *7. It ignores the teachings of the Supreme Court in *Jennings*, which draws a clear

---

[4] Section 1226(c) governs aliens accused of crimes, which does not apply here, given that Gimenez Rivero undisputedly has not been accused of any crime, nor does he have any criminal history. (*See* Doc. 1, pp. 2–3.)

distinction between aliens seeking admission at the border subject to § 1225 and aliens already present subject to § 1226. *See Jennings*, 583 U.S. at 296–306. And it disregards more than half a century of precedent enshrining into law the heightened protections applicable to noncitizens already living within our borders. *See Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality."). The Government's reading is simply insupportable on all fronts.[5]

Previously, DHS had a longstanding practice of treating aliens already present in the country as detained under § 1226 and subject to bond hearings. *See In re Yajure Hurtado*, 29 I.&N. Dec. 216, 225 (BIA 2025). The Government's recent about-face toward mass mandatory detention under § 1225 was blessed by the Board of Immigration Appeals ("BIA"). *See id.* at 229. Unfortunately for the Government, the Supreme Court recently concluded that "agencies have no special competence in resolving statutory ambiguities. Courts do." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400–01 (2024). And "[c]ourts interpret statutes,

---

[5] This Court need not reiterate other courts' exhaustive statutory interpretation analyses and particularly appreciates the good work of Judge O'Hearn on this question. *See Bethancourt Soto*, 2025 WL 2976572.

9

no matter the context, based on the traditional tools of statutory construction, not individual policy preferences." *Id.* at 403. There is no ambiguity here. The BIA is wrong, and the Government is wrong, and plainly so. *See Zumba v. Bondi*, No. 25-CV-14626, 2025 WL 2753496, at *9 (D.N.J. Sep. 26, 2025) (concluding that the court need not defer to the BIA's incorrect decision in *Hurtado* because the statute is clear).

In sum, this Court joins the many, many others to conclude that mandatory detention under § 1225 does not apply to noncitizens who are already present in this country. *See Bethancourt Soto*, 2025 WL 2976572, at *7 (collecting cases). So the Government's detention of Gimenez Rivero under § 1225 is unlawful, and he is entitled to habeas relief.[6]

### III.   Remedy

That brings us to the fashioning of relief. This Court cannot conclude, as some others have, that ordering the Government to provide the detainee with a bond hearing under § 1226 fixes the problem. *See, e.g.*, *Gallardo v. Warden Glades*

---

[6] Petitioner has demonstrated entitlement to habeas relief under 28 U.S.C. § 2241, so he has shown success on the merits sufficient to justify the issuance of an injunction, as well as irreparable injury and the balance of equities and the public interest in his favor. *See Rojano Gonzalez v. Sterling*, No. 1:25-CV-6080, 2025 WL 3145764, at *8 (N.D. Ga. Nov. 3, 2025) (prohibiting government from applying § 1225 in unlawful manner prevents irreparable harm, and equity and public interest are served by preventing continuing violation of immigration law); *see also Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995); *Melendez v. Sec'y, Fla. Dep't of Corr.*, No. 21-13455, 2022 WL 1124753, at *17 (11th Cir. Apr. 15, 2022); Fed. R. Civ. P. 65; Local Rules 6.01, 6.02.

*Detention Facility*, No. 2:25-cv-1193, 2026 WL 139244, at *2 (M.D. Fla. Jan. 20, 2026). The Government had an opportunity to argue in the alternative that Petitioner was subject to detention under § 1226; it did not. (*See* Doc. 12.) With the Government having asserted no lawful basis for his detainer, this Court could only conclude that Gimenez Rivero was entitled to immediate release. *See Bethancourt Soto*, 2025 WL 2976572, at *9; *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) ("[T]he habeas court must have the power to order the conditional release of an individual unlawfully detained."). Forcing a detainee to wait for a hearing for days or weeks more in custody—under who knows what conditions[7]—when he is not lawfully detained in the first place would gut the purpose of habeas review. *See Kashranov*, 2025 WL 3188399, at *8. And immigration judges are refusing to conduct bond hearings entirely under § 1226,[8] so "the grant of a hearing is no remedy at all." *See, e.g.*, *Marco M. v. Bondi*, No. 25-CV-4816 (D. Minn. Jan. 25, 2026) (Doc. 11, p. 3).

Rather, the only appropriate remedy was to direct Respondents to immediately release Petitioner and to permanently enjoin them from detaining him under § 1225. *See Bethancourt Soto*, 2025 WL 2976572, at *9. The only condition

---

[7] *See generally* Churchill Ndonwie, *Human Rights Report, Art Exhibit Allege Inhumane Conditions at Alligator Alcatraz*, MIA. HERALD (Dec. 4, 2025), www.miamiherald.com/news/local/immigration/article313322152.html.

[8] *See generally* Kyle Cheney, *Judges, Inundated with Immigration Cases, Don't Mince Words on ICE Tactics*, POLITICO (Jan. 26, 2026), www.politico.com/news/2026/01/26/minnesota-immigration-cases-ice-00746275.

of release the Court imposed, given Gimenez Rivero's lack of criminal charges or history, was that he inform his lawyer if he intends to change his residence during the pendency of his immigration proceedings. To effectuate the purpose of its ruling, the Court also temporarily enjoined Respondents from detaining Petitioner under § 1226 for a period of ten days. *See Kashranov*, 2025 WL 3188399, at *8; *Zumba*, 2025 WL 2753496, at *11. Should the Government later choose to detain him under § 1226, he must be timely provided with a bond hearing. *See Bethancourt Soto*, 2025 WL 2976572, at *9. If he is detained under § 1226 and does not receive a bond hearing within ten days, the Government must release him. *See Gallardo*, 2026 WL 139244, at *2. The Court retained jurisdiction to ensure that the Government complies with this ruling.

## IV. Sanctions

Gimenez Rivero's immediate release provides him with the remedy he deserves. But it does not remedy everything that happened in this Court.

Judges across the country—the vast majority who have considered this question—have told the Government many times in the past few months that its interpretation of the law is wrong.[9] *See Bethancourt Soto*, 2025 WL 2976572, at *7. This is no partisan stance: judges appointed by every President from

---

[9] *See generally* Kyle Cheney, *Hundreds of Judges Reject Trump's Mandatory Detention Policy with No End in Sight*, POLITICO (Jan. 5, 2026), www.politico.com/news/2026/01/05/trump-administration-immigrants-mandatory-detention-00709494.

12

Ronald Reagan through Donald Trump have said so.[10] This Court no longer has the power to issue a nationwide injunction to stop the Government from reasserting this same baseless argument en masse. *See Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025).

But no matter what is happening outside this Court,[11] the rules inside it remain the same. Every attorney who presents a filing to the Court represents that the factual contentions have evidentiary support and the legal contentions are warranted. *See* Fed. R. Civ. P. 11. If the Government is going to argue for expanding the interpretation of a law or maintain a widely rejected position to preserve its appellate rights, it may do so. But its lawyers must make those arguments in a way that comports with their professional obligations, as lawyers

---

[10] *See, e.g.*, *Reyes v. Bondi*, No. 4:25-CV-239, 2025 WL 3755928, at *3 (S.D. Ind. Dec. 29, 2025) (Barker, J., Reagan appointee); *Buenrostro-Mendez v. Bondi*, No. CV H-25-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) (Rosenthal, J., George H.W. Bush appointee); *Gallardo v. Warden Glades Detention Facility*, No. 2:25-cv-1193, 2026 WL 139244, at *1 (M.D. Fla. Jan. 20, 2026) (Steele, J., Clinton appointee); *Quispe v. Crawford*, No. 1:25-CV-1471, 2025 WL 2783799, at *6 (E.D. Va. Sep. 29, 2025) (Trenga, J., George W. Bush appointee); *Giron Reyes v. Lyons*, 801 F. Supp. 3d 797, 804–05 (N.D. Iowa 2025) (Strand, J., Obama appointee); *Singh v. Lewis*, No. 4:25-CV-96, 2025 WL 2699219, at *5 (W.D. Ky. Sep. 22, 2025) (Jennings, J., Trump appointee); *Bethancourt Soto v. Soto*, No. 25-CV-16200, 2025 WL 2976572, at *7 (D.N.J. Oct. 22, 2025) (O'Hearn, J., Biden appointee).

[11] The Court has taken the highly unusual step of citing news articles throughout this Order—something other judges have also done under these circumstances. *See, e.g.*, *Castillo Reyes v. Rose*, No. 25-7138, 2026 WL 75816, at *1 n.2 (E.D. Penn. Jan. 9, 2026). The Government's woeful, wholesale failure to point to scores of contrary persuasive cases led the Court to look outside the record for context. That said, the Court did not rely on any of these articles in coming to its conclusions, does not take any of the allegations in those articles as fact or law, and takes no judicial notice of anything in the articles. They are here simply to make the point that the Government is asking the Court to make a ruling totally devoid of context, as if we live in a fantasy world where hundreds of other judicial orders do not exist.

have done since time immemorial: Cite the contrary binding authority and argue why it's wrong. Don't hide the ball. Don't ignore the overwhelming weight of persuasive authority as if it won't be found. And don't send a sacrificial lamb to stand before this Court with a fistful of cases that don't apply and no cogent argument for why they should.

Members of this Bar have a duty of candor to the Court. The Government's response (Doc. 11) does not meet that standard. So U.S. Attorney Gregory W. Kehoe, Esq., and Assistant U.S. Attorney Joy Warner, Esq., must show cause why they should not be sanctioned.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

1. The Petition (Doc. 1) for a writ of habeas corpus is **GRANTED**.

2. The motion for temporary restraining order (Doc. 4) is **GRANTED**.

3. Respondents Sheriff John Mina, Louis A. Quinones, Jr., ICE/U.S. Immigration and Customs Enforcement, the Warden of the Orange County Jail, and the U.S. Attorney General, and all other persons or entities acting in active concert or participation with them, are **PERMANENTLY RESTRAINED AND ENJOINED** from detaining Petitioner Javier Gimenez Rivero under 8 U.S.C. § 1225.

4. Respondents Sheriff John Mina, Louis A. Quinones, Jr., ICE/U.S.

Immigration and Customs Enforcement, the Warden of the Orange County Jail, and the U.S. Attorney General, and all other persons or entities acting in active concert or participation with them, are **TEMPORARILY RESTRAINED AND ENJOINED** from detaining Petitioner Javier Gimenez Rivero under 8 U.S.C. § 1226(a) until at least **Monday, February 2, 2026**. Should Respondents elect to later detain him under that statute after that date, Respondents are **DIRECTED** to release him within ten days of his detainer unless he is provided with a bond hearing before an immigration judge during that ten-day period.[12] If he is redetained and released, Respondents must facilitate his transportation from the detention facility by notifying his counsel of the time and place where he may be collected.

5. No security bond is required for this injunction as the Court deems it unnecessary.

6. Petitioner is **DIRECTED** to notify his counsel should his place of residence change while his immigration proceedings are ongoing.[13]

---

[12] The Court is aware of a recently certified class action of aliens in immigration detention being denied access to bond hearings, which is on appeal. *See Bautista v. Santacruz*, No. 5:25-cv-1873, 2025 WL 3713987, at *32 (C.D. Cal. Dec. 18, 2025).

[13] *See* Ivan Taylor, *South Florida Man Detained at "Alligator Alcatraz" Says He Wants to Be Deported: "Allow Me to Leave This Country,"* CBS NEWS (Dec. 9, 2025), www.cbsnews.com/miami/news/south-florida-alligator-alcatraz-wants-to-be-deported-alexis-rodriguez/.

7. The Clerk is **DIRECTED** to enter judgment in favor of Petitioner and against Respondents and then to close the file.

8. The Court **RETAINS** jurisdiction to enforce the terms of this Order. If Petitioner is later detained and deprived of a timely hearing but not released as ordered herein, he may move to reopen this case without opening a new file. The Court also retains jurisdiction to consider the matter of fees and costs.

9. By **Monday, February 9, 2026**, U.S. Attorney Gregory W. Kehoe, Esq., and Assistant U.S. Attorney Joy Warner, Esq., are **ORDERED TO SHOW CAUSE** by written response why they should not be sanctioned for the reasons set forth above, including by being required to pay Petitioner's attorney's fees and costs, under the following rules and/or the Court's inherent powers. *See* Fed. R. Civ. P. 11; Local Rule 2.01(b)(2)(c); Local Rule 2.01(e); Fla. Bar R. 4-1.1; Fla. Bar R. 4-3.1; Fla. Bar R. 4-3.3; and Fla. Bar R. 4-8.4.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 26, 2026.

ROY B. DALTON, JR.
United States District Judge