UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JAVIER GIMENEZ RIVERO,

    Petitioner,

vs.                                           Case No. 6:26-cv-66-RBD-NWH

LOUIS QUINONES, JR.,
et al.,

    Respondents.
_____/

## **RESPONSE TO ORDER TO SHOW CAUSE**

United States Attorney Gregory W. Kehoe and Assistant United States Attorney Joy Warner hereby respond to the order to show cause (Doc. 15; "OTSC") entered in this matter on January 26, 2026, and respectfully request the OTSC be discharged with no sanctions imposed.[1]

At the outset, Respondents acknowledge that, while the response to the petition for habeas corpus did not cite prior contrary district court decisions, this oversight was unintentional, was not from a lack of candor, and will not re-occur. AUSA Warner has the support of the U.S. Attorney and other managers.

---

[1] The United States respectfully requests a hearing and oral argument on this motion. Pursuant to Local Rule 3.01(i), we will be filing a motion for that relief contemporaneously with our filing of this response.

1

The filing in question resulted, in part, from the extremely high volume and expedited timelines in the current Orlando habeas corpus docket.

## I.   FACTUAL BACKGROUND

The petition for habeas corpus was filed on January 12, 2026. Doc. 1.[2] A motion for a temporary restraining order ("TRO") was filed on the following day, Doc. 4, which this Court granted on January 14, 2026, and directed the Respondents to maintain the Petitioner in the Orange County Jail. Doc. 5. The Court entered a further order on that same day, Doc. 7, ordering a response to the motion for TRO and petition on January 20, 2026, by noon. Doc. 8.

In granting the TRO, the Court stated,

> [C]ourts have determined that aliens, like Petitioner, who are present in the United States and have TPS [Temporary Protected Status] and active applications for asylum, are not subject to mandatory detention without a bond hearing under 8 U.S.C. § 1225(b)(2). *See, e.g., Reyes v. Rose*, No. CV-25-1738, 2026 WL 75816, at *1 n.1 (E.D. Pa. Jan. 9, 2026) (concluding the petitioner was detained under 8 U.S.C. § 1226(a) and entitled to habeas relief by the way of a bond hearing and noting that "[a]s of January 5, 2026, '308 judges have ruled against the [Government's] mass detention policy—ordering release or bond hearings in more than 1,600 cases—while just 14 judges … have sided with the [Government's] position.'"). Rather, these courts have held that such individuals are subject to detention under 8 U.S.C. § 1226(a), and thus, entitled to a bond hearing. *See id*.

---

[2] Petitioner did not state whether he was being detained pursuant to 8 U.S.C. § 1225 or 8 U.S.C. § 1226, nor was any legal analysis regarding § 1225 or § 1226 included in the petition.

> The likelihood of Petitioner's success on the merits largely is contingent on whether he has TPS and/or is detained under 8 U.S.C. § 1226(a). The Court recognizes that "there is ongoing litigation about the future of Venezuela's TPS designation." Nevertheless, from Petitioner's allegations, he is currently protected by TPS and/or appears to be entitled to a bond hearing. Consequently, his detention appears to be unlawful or warranting of a bond hearing, and he has demonstrated a likelihood of success on the merits.

Doc. 7 at 4–5 (some citations omitted). The government timely filed its response. Doc. 11.

The Court held a hearing the following day; the transcript is attached as Exhibit A. The Court ordered the immediate release of the Petitioner on the day of the hearing. Doc. 13. On January 26, 2026, the Court entered a further order that (among other things) ordered U.S. Attorney Kehoe and AUSA Warner to show cause why they should not be sanctioned due to lack of candor to the Court. Doc. 15.

## II.   RESPONSE

Respectfully, U.S. Attorney Kehoe and AUSA Warner ask that they not be sanctioned under the circumstances. The Court expressed serious concerns at Doc. 15 about the quality of the government's response to the petition. At the outset, we wish the Court to know that the U.S. Attorney's Office takes such concerns seriously. We acknowledge the shortcomings of the filing in question in several respects. First, the Court's order granting the TRO signaled the

Court's interest in the application of 8 U.S.C. § 1226, and the response focused solely on the application of 8 U.S.C. § 1225(b).  We concede that we did not fully respond to the § 1226 issue highlighted by the Court's order and focused solely on § 1225.  That was an unintentional oversight, and we regret the omission.

Second, and perhaps more centrally, the Court expressed concerns about lack of candor, noting that our response did not bring to the Court's attention the authority in opposition to our position.  While the Court was aware of the § 1226 jurisprudence, this was also an unintentional mistake, and we regret it.  Respectfully, though, AUSA Warner was neither intentionally evading the issue nor knowingly ignoring the previous cases in which the government's position had been rejected. While not an excuse, based upon the Court's Order (Doc. 7 at 4–5), the Court was also well versed on the legal arguments governing the application of § 1225 versus § 1226 and knew that the United States' position had been rejected by many Courts.

By way of explanation, there is no controlling authority in the Eleventh Circuit or Supreme Court on these issues.[3]  Although the majority rule is

---

[3] The Fifth Circuit recently held in *Buenrostro-Mendez v. Bondi*, et al., No. 25-20496, --- F.4th ---, 2026 WL 323330 (5th Cir. Feb. 6, 2026), that aliens who have not been legally admitted to the United States are subject to mandatory detention under 8 U.S.C. § 1225(b)(2) regardless of whether the alien is already present in the United States.

contrary to the government's position, the legal question remains unsettled. Compare *Lopez v. Director of Enforcement, et al*, Case no. 3:25-cv-1313-JEP-SJH (M.D. Fla.) (Doc. 9) with *Guaiquiere v. Quinones*, Case no. 6:26-cv-169-RBD-RMN (M.D. Fla.) (Doc. 19). However, at no time did AUSA Warner intend to misrepresent the present state of the law or seek to mislead the Court. Nonetheless, AUSA Warner apologizes for mistakenly and unintentionally not having cited prior contrary court decisions.

This Court was also critical of the United States's position on subject matter jurisdiction. We acknowledge the Court's criticism and will provide more responsive and specific argument on this issue in the future. Again, in our modest defense, there is arguably support for our position elsewhere. *See Munoz Nataren v. Raycraft*, No. 4:26-cv-212, 2026 WL 214368, at *2 (N.D. Ohio Jan. 28, 2026); *see also Torres v. Quinones*, Case no. 6:26-cv-184-AGM-LHP (M.D. Fla.) (Doc. 4 at 6-7) (allegations of petition leave jurisdiction in doubt). Even one Court disagreeing with the United States notes this "statutory-interpretation issue is difficult and close." *Ahmed v. Bondi*, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *1 (D. Minn. Jan. 5, 2026). While the filing as a whole was not up to our usual high standards, we take the Court's comments to heart and ask that the Court forbear from entering sanctions.

The lack of guidance from the Eleventh Circuit or Supreme Court to date

supports the conclusion that the Government's positions—although rejected by this Court and many others—are still arguable. "Federal Rule of Civil Procedure 11 provides that sanctions may be imposed against a party who files a pleading that: (1) has an improper purpose; (2) has no reasonable legal basis; or (3) has no reasonable factual basis." *Walther v. McIntosh*, No. 6:13-cv-472-Orl-37GJK, 2013 U.S. Dist. LEXIS 144730, at *5 (M.D. Fla. Oct. 4, 2013). "The court must determine 'whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified.'" *Id.* (citing *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003)). While the government's position has been rejected by this Court and many others, it is a nonfrivolous argument with a reasonable legal basis endorsed by some district courts and a Circuit Court. *See Buenrostro-Mendez v. Bondi*, et al., No. 25-20496, --- F.4th ---, 2026 WL 323330 (5th Cir. Feb. 6, 2026). "[A] district court may grant sanctions when a party files a pleading 'based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law.'" *Accelerant Specialty Ins. Co. v. Small*, No. 8:25-cv-425-KKM-AAS, 2026 U.S. Dist. LEXIS 1072, at *3 (M.D. Fla. Jan. 6, 2026) (citing *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)). While only a minority of district courts and one Circuit Court have agreed with the United States' arguments, they are nevertheless legal theories that are nonfrivolous and

6

have a chance of success.

Similar reasoning applies to Fla. Bar R. 4-3.1, R. 4-3.3, and R. 4-8.4. As evidenced by a small number of district court decisions and now the Fifth Circuit Court of Appeals, there is an arguable basis for the government's positions, and as such, the arguments are not frivolous pursuant to Fla. Bar R. 4-3.1. As there is no binding precedent from the Eleventh Circuit or Supreme Court, there was no failure to disclosure controlling legal authority in this jurisdiction that would violate Fla. Bar R. 4-3.3. AUSA Warner did not engage in any dishonesty or misrepresentation, and the Court was aware of the legal landscape even before the United States filed its response. Accordingly, there was no violation of Fla. Bar R. 4-8.4.

We wish to assure the Court that we continue to have a high degree of confidence in AUSA Warner, who has been with our office as a civil AUSA since December 2024 and has been an attorney on behalf of the United States since 2019. She has been an excellent and reliable public servant, and this is the first time we have fielded concern from a judge about her work.[4] We continue to believe AUSA Warner to be a diligent and responsible lawyer. While she

---

[4] Shortly after the events leading to the OTSC here, Judge Byron entered an order reprimanding AUSA Warner, also in a habeas case. *Rosamilia v. Mina*, Case no. 6:26-cv-209-PGB-LHP (MDFL), Doc. 14. We will address Judge Byron's concerns at a later date, but respectfully, our initial assessment is that it may be premised on a misunderstanding that can be explained, if we are given an opportunity. There was no opportunity to do so prior to the issuance of Judge Byron's Order.

has no expertise in immigration law (few civil AUSAs in our district do), she has shown an admirable willingness to assist with this difficult docket and defend it to the best of her ability. The attached Declaration of Civil Division Management attached as Exhibit B describes the views of Civil Chief and Deputy Civil Chief of AUSA Warner's professionalism and legal talent.

In closing, we also ask that the Court understand the challenging context in which this particular case and filing arose. The Middle District of Florida is currently experiencing an unprecedented onslaught of habeas corpus petitions. In a typical year, this District sees 150 to 180 civil immigration cases of all kinds. This year we are on track to receive perhaps ten times that number. The week of January 12, 2026, the week that the instant petition was filed, there were approximately 34 petitions filed in the Middle District of Florida. All of these habeas petitions were placed on expedited response schedules, and many also had expedited hearings scheduled.

The Civil Division of the United States Attorney's Office has endeavored to timely respond to these filings with quality legal responses. By way of explanation and not excuse, we are short staffed in the Orlando Civil Division, which exacerbates our ability to confront this challenging docket. That is obviously not the Court's concern, and we offer it neither as a defense nor

justification to what has concerned the Court.[5]  On the other hand, it is certainly a factor to consider as the Court considers sanctions, insofar as it paints a picture of an extremely challenging (indeed, unprecedented) environment for civil AUSAs to operate in.

### III.  CONCLUSION

For all these reasons, we thank the Court for giving us the opportunity to explain how this situation unfolded.  In addition, we respectfully request that the Court discharge the OTSC and impose no sanctions upon either U.S. Attorney Kehoe or AUSA Warner.

Date: February 9, 2026

Respectfully submitted,

*/s/ Gregory W. Kehoe*
Gregory W. Kehoe
United States Attorney
Florida Bar No. 486140
400 N. Tampa Street, Suite 3200
Tampa, Florida
Telephone: (813) 274-6000
Email: Gregory.kehoe@usdoj.gov

*/s/ Joy Warner*
Assistant United States Attorney
USA No. 229
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7581
Facsimile: (407) 648-7588
Email: joy.warner@usdoj.gov

---

[5] Also, we are addressing the staffing issues.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 9, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to the following CM/ECF participant:

Phillip Arroyo, Esq.

*/s/ Joy Warner*
Assistant United States Attorney
